IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| KARINE L. MAIER, as surviving spouse of James R. Maier and as Executrix of the Estate of James R. Maier,<br><br>　　　Plaintiff,<br><br>v.<br><br>GREEN EYES USA, INC.; FAUSTINO JIMENEZ; CANAL INSURANCE COMPANY; SHELLY, MIDDLEBROOKS & O'LEARY, INC.; AEQUICAP INSURANCE COMPANY; K.V. CARRIER SERVICES, INC.; JAKE KANONITZ; KANNON & KANNON INSURANCE, INC.; DOT SERVICES CORP.; and AEQUICAP PROGRAM ADMINISTRATORS, INC;<br><br>　　　Defendants. | CASE NO. CV409-172 |

O R D E R

Before the Court is Defendants Canal Insurance Company ("Canal") and Shelly, Middlebrooks & O'Leary, Inc.'s ("SMO") Motion for Summary Judgment.[1] (Doc. 141.) For the reasons that follow, this motion is **GRANTED** as to all claims in Plaintiff's complaint.[2]

---

[1] Throughout the remainder of this order, "Defendants" refers to Defendants Canal and SMO unless another Defendant is specifically named or all Defendants are referenced as a group.

[2] Because the Court finds that this motion can be resolved without the aid of oral argument, Plaintiff's request for such is **DENIED**. (Doc. 188.) See Milburn v. United States, 734 F.2d

1

## BACKGROUND

In this action, Plaintiff Maier filed suit against several defendants, seeking recovery for the death of James R. Maier ("Maier")[3] as a result of an October 14, 2008 accident involving a tractor trailer. (Doc. 40 ¶ 1.) On that morning, Maier's vehicle became disabled and was stopped in the northbound emergency lane of Interstate 95 ("I-95") near Savannah, Georgia. (Id. ¶ 7.) Defendant Faustino Jiminez ("Jiminez"), employed by Defendant Green Eyes USA, Inc. ("Green Eyes"), was operating a tractor trailer and also travelling northbound on I-95. Plaintiff alleges that at approximately 6:20 a.m., the tractor trailer Defendant Jiminez was operating struck and killed Maier, "who was standing entirely within the emergency lane next to his disabled vehicle." (Id. ¶ 9.)

Plaintiff generally contends that multiple Defendants in this case "undertook to perform driving record inquiries and back ground [sic] investigations on tractor trailer drivers applying for employment with" Defendant Green Eyes. (Id. ¶ 19.) This undertaking extended to performing "driving record inquiries and back ground [sic] investigations on current tractor trailer drivers for [Defendant Green Eyes] and to

---

762, 765 (11th Cir. 1984) ("It is well settled in this circuit that Rule 56[] does not require an oral hearing.").
[3] Throughout the remainder of this order, "Maier" refers to James R. Maier and "Plaintiff" refers to Plaintiff Karine L. Maier.

2

monitor their motor vehicle records." (Id. ¶ 20.) Plaintiff alleges that Defendant Green Eyes neglected or reduced its own activities in this area, specifically relying on several other Defendants to perform those tasks. (Id. ¶ 21-22.)

As applied to this case, Plaintiff contends that Defendants "knew or should have known" that Defendant Jiminez "had a history and disposition of operating tractor trailers in a negligent and reckless manner;" "had been cited for, and convicted of, at least thirteen moving violations;" "had been involved in at least one prior tractor trailer collision, which occurred on or about April 28, 2004, and as a result of said collision, [Defendant Jiminez] received a citation for improper lane change and was subsequently convicted of said citation;" had his commercial driver's license ("CDL") suspended in 2005 for accumulating twelve "points" within a twelve month period; and had his CDL "disqualified for a period of One Hundred [sic] and Twenty (120) days in 2006, because he had previously been convicted of three serious traffic violations within three years." (Id. ¶¶ 23-27.) These contentions culminate with the conclusion that Defendant Jiminez was not competent to safely operate a tractor trailer, and Defendants knew or should have known of his lack of competency prior to the fatal accident underlying this case. (Id. ¶¶ 28-29.) Plaintiff also alleges that Defendants are liable under Restatement (Second) of Torts

("Restatement") § 324A(b) and were negligent in training and supervising Defendant Jiminez; entrusting him with a tractor trailer; and hiring, employing, and retaining him. (Id. ¶¶ 32-36.) Defendants are also alleged to have acted "with reckless and wanton disregard and a conscious indifference for the consequences of their actions." (Id. ¶¶ 42-43.)

In the motion presently before the Court, Defendants argue that Plaintiff has insufficient evidence to establish a claim under any subsection of Section 324A of the Restatement, that Plaintiff's claims are barred by federal preemption, and that Plaintiff is not entitled to seek punitive damages from either Defendant. Plaintiff has responded in opposition, and a seemingly endless volley of responsive briefing has raised other arguments, which will only be addressed if dispositive to any issue in this case. (Docs. 189-90, 219, 226, 228, 233, 236, 239.)

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of

summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. EXAMINATION OF PLAINTIFF'S CLAIMS

Defendants have moved for summary judgment as to all claims Plaintiff has asserted against them. (Doc. 142 at 3.) Plaintiff has only opposed summary judgment with respect to the counts, or by using the legal concepts, specifically discussed below.[4]

---

[4] The relevant rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also S.D. Ga. L.R. 7.5 ("Unless these rules or the assigned Judge prescribes otherwise, each party opposing a motion shall serve and file a response within twenty-one (21) days after service of the motion for summary judgment. Failure to respond within the applicable

A.  Third Party Liability Under Georgia Law

Georgia has adopted Restatement § 324A to serve as the framework for imposition of third party liability. Huggins v. Aetna Cas. & Sur. Co., 245 Ga. 248, 249, 264 S.E.2d 191, 192 (1980) ("We here adopt the majority rule as stated in the Restatement 2d Torts § 324A."). This section states that

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A.

In Georgia, a voluntary undertaking amounts to liability only if one or more of the additional requirements stated in § 324A is satisfied. U.S. Aviation Underwriters, Inc. v. United States, 530 F. Supp. 2d 1315, 1319 (M.D. Ga. 2007). As the

---

time period shall indicate that there is no opposition to a motion."). The Court concludes that on the basis of the undisputed facts in the record, Defendants are entitled to summary judgment as to all claims not expressly addressed elsewhere in this order.

parties have framed the issues, only two subsections, § 324A(a) and (c), appear to be at issue.

1. *Plaintiff's Claim Under Restatement § 324A(a)*

Defendants argue that they are entitled to summary judgment on the Restatement § 324A(a) claim because Plaintiff is unable to demonstrate the "alleged negligence increase[d] the risk of harm." (Doc. 142 at 17.) After careful consideration and for the reasons that follow, the Court agrees. Accordingly, Defendants' motion is **GRANTED** as to Plaintiff's § 324A(a) claim.

The plain language of the relevant Restatement subsection requires that the tortfeasor's "failure to exercise reasonable care increase[] the risk of [] harm." Restatement (Second) of Torts § 324A(a). Georgia courts have consistently held that this subsection is applicable only "when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed." BP Exploration & Oil, Inc. v. Jones, 252 Ga. App. 824, 830, 558 S.E.2d 398, 405 (2001); Adler's Package Shop v. Parker, 190 Ga. App. 68, 71, 378 S.E.2d 323, 326 (1989); Argonaut Ins. Co. v. Clark, 154 Ga. App. 183, 185, 267 S.E.2d 797, 799 (1980). The Restatement provides an illustration to guide the interpretation of this concept:

> A store calls B electric company to repair a defective light hanging over one of the aisles of the store. B's workman repairs the light, but leaves the fixture

>     so loosely attached that it falls upon and injures C,
>     a customer in the store who is walking down the aisle.
>     B is liable to C.

Restatement (Second) of Torts § 324A cmt. c, illus. 1.

Plaintiff has argued in opposition that Defendants "increased the likelihood of harm to Mr. Maier." (Doc. 189 at 30.) This legal conclusion is based on a chain of events beginning in March 2008 when Defendant Jiminez was approved and found acceptable by Defendants, allegedly in contravention of Defendant Green Eye's policy and reliance on Defendant's review of motor vehicle records ("MVR"). (Id.) According to Plaintiff, this policy is one that Defendants applied and used as a basis for rejecting drivers on prior occasions. (Id. at 32.) Plaintiff's argument culminates with a series of conclusory arguments, stating that

> [h]ad Canal followed Green Eyes' hiring criteria, even
> going by the three year MVR, Faustino Jiminez would
> not have been hired by Green Eyes and James Maier
> would be alive. There is clearly evidence that Shelly
> and Canal failed to exercise reasonable care in
> reviewing Jiminez's MVR and in approving him, in
> contravention of the Green Eyes' employment criteria,
> and that such increased the risk of harm to James
> Maier by allowing Jiminez to be driving the Green
> Eyes' tractor-trailer up I-95 on the morning of
> October 14, 2008, thereby resulting in Mr. Maier's
> death.

(Doc. 189 at 32.) Plaintiff also argues that "[d]efendants caused a driver with a deplorably bad driving record to be hired to operate one of Green Eyes' tractor-trailers, where he was a

9

hazard to James Maier and other motorists on the highway." (Id. at 34.)

At most, this argument appears to be one of only causation. The law, however, demands more than causation alone. Instead, it requires that the tortfeasor have actually increased the risk of harm or caused some nonhazardous condition to become hazardous. Plaintiff's evidence stops well short of this required mark, and a brief overview of the record and Georgia law demonstrates why this is the case.

Several cases by Georgia state courts have applied Restatement § 324A(a) to a third party's actions. In Dale v. Keith Built Homes, Inc., 275 Ga. App. 218, 218, 620 S.E.2d 455, 456 (2005), a child riding a skateboard was struck by a motor vehicle driven by a construction company's employee. Although the construction company had a "no-drinking policy," the plaintiffs contended that the construction company's "failure to enforce" that policy "increased the risk of harm to third persons." Id. at 219, 620 S.E.2d at 456. The plaintiffs in Dale were arguing that if the policy been properly enforced, the employee would not have been driving, and the boy would not have been struck by the truck. Id. Ergo, no accident or injuries would have resulted. Plaintiff's claim in the instant case follows similar logic—if Defendants had enforced the policy, Defendant Jiminez would not have been driving, the accident

would not have happened, and the decedent would still be alive. The Georgia Court of Appeals characterized the plaintiff's reasoning in <u>Dale</u> by stating that "plaintiffs essentially argue that it was incumbent upon KBH to <u>decrease</u> the risk of harm to others by enforcing its no-drinking policy. This, however, is not the law: "failing to take all possible actions to prevent an occurrence is not the same as increasing the risk of occurrence." <u>Id.</u> at 220, 620 S.E.2d 456-57.

A recent decision from this district also rejects a similar argument. In <u>Great N. Ins. Co v. Ruiz</u>, 688 F. Supp. 2d 1362 (S.D. Ga. 2010), an insurance company pursued a subrogation action against a painter and a homeowners' association for either causing or aggravating damages resulting from a residential fire. There, the plaintiffs alleged that the failure of a homeowner's association "to properly monitor the security [camera] screens and establish a specific protocol for monitoring the screens increased the risk of harm to the resident." <u>Id.</u> at 1379-80 (internal citation and quotation omitted). In that case, the court held that plaintiffs had not demonstrated how the association's "alleged failings <u>increased the risk that the fire would occur or spread beyond control</u>." <u>Id.</u> at 1379 (second emphasis added). Applied to the instant case, this further illustrates the flaw in Plaintiff's argument. Defendants' actions did not cause Defendant Jiminez to change

11

from a "nonhazardous condition" to a "hazardous condition" simply by ignoring an employment policy, and their action or inaction did not "increase the risk of harm" in the sense the law requires.

Finally, Howell v. United States, 932 F.2d 915 (11th Cir. 1991) provides another example of how Plaintiff's proposed theory is outside the ambit of § 324A. In Howell, an FAA inspector cancelled a "check ride" with a pilot after the inspector learned the plane's fuel was contaminated. Id. at 917. Although the director of maintenance for the plane's owner voluntarily grounded the aircraft, a company executive ignored the problem and ordered the plane back into service. Id. Seventeen people died in the crash that followed, which was caused by a loss of power from ingestion of contaminated fuel. Id. In that case, the plaintiffs argued that the

> FAA inspector, upon seeing the contaminated fuel two days before the crash, should have taken further action (such as, grounding the plane, issuing an official notice, or initiating an investigation into the cause of the contamination) and that his failure to do so breached a legal duty owed to the future passengers of the ill-fated plane.

Id. The Court also rejected this argument, concluding that

> [t]he FAA inspector's failure to ground the plane, issue a notice, or initiate an investigation did not increase the risk of harm under Georgia law. In Argonaut the Georgia Court of Appeals said that, for purposes of the section 324A "good Samaritan" doctrine, a risk is only increased when a nonhazardous condition is made hazardous through the negligence of

> a person who changed its condition or caused it to be changed. The FAA inspector <u>caused no such change in the condition of this plane or its fuel</u>.

Id. at 918-19 (internal quotation and citation omitted) (emphasis added). Similarly in this case, Defendants' alleged action or inaction did not change any characteristic of Defendant Jiminez, or his driving aptitude or ability. <u>See, e.g.</u>, <u>Smallwood v. United States</u>, 988 F. Supp. 1479, 1482 (1997) ("[T]he OSHA inspectors caused no change to the vats by their acts or omissions. Indeed, if the vats were hazardous, they were hazardous prior to the inspections."); <u>BP Exploration</u>, 252 Ga. App. at 830, 558 S.E.2d at 405 (concluding that a "failure to respond to complaints" did not "increase[] the risk to customers").

Further, any reliance by Plaintiff on <u>Hutcherson v. Progressive Corp.</u>, 984 F.2d 1152 (11th Cir. 1993), for a claim based on this specific subsection of Restatement § 324A is misplaced. This case, while based on a seemingly analogous factual scenario, addresses only different subsections, Restatement § 324A(b)-(c). Ultimately, Plaintiff's § 324A(a) claim suffers from an insurmountable defect. Accordingly, Defendants' Motion for Summary Judgment (Doc. 141) is **GRANTED** as to this claim.

### 2. *Plaintiff's Claim Under Restatement § 324A(c)*

Plaintiff has also asserted a claim against Defendants pursuant to Restatement § 324A(c), which requires, in part, that the harm be "suffered because of reliance of the other or the third person upon the undertaking." Because Plaintiff is unable to demonstrate any genuine issue of material fact as to Defendant Green Eyes' reliance or causation, each a required element of this claim, Defendants' Motion for Summary Judgment (Doc. 141) must be **GRANTED**. Although Plaintiff and Defendants raise several arguments in support of their respective motions, the Court will only discuss those worthy of detailed analysis.

Defendants' primarily argue that Plaintiff is unable to show that "the decedent's death was caused by Green Eye's [sic] reliance on Canal and/or Shelly's labeling a potential driver as 'acceptable,' 'unacceptable' or 'acceptable with a surcharge.'" (Doc. 142 at 20.) In doing so, Defendants attempt to distinguish Hutcherson, 984 F.2d 1152, by claiming that the only similarity between the insurance companies involved is that both insurers defended § 324A(c) claims. Defendants claim that the insurer in Hutcherson "provided services well beyond those alleged here by Canal and/or Shelly, to Green Eyes." (Doc. 142 at 20.)

Progressive, the insurer in Hutcherson, 984 F.2d 1152, 1154, provided the trucking company, TABS, Inc., with

14

"commercial fleet insurance that included a number of safety services, including periodic independent reviews of TABS' drivers, intended to supplement TABS' internal safety program." Prior to the accident underlying that case, Progressive "requested that TABS place [the involved driver] on 'watch status' for six months. . . . [I]f additional violations were found, Progressive would ask TABS to place [the involved driver] in a non-driving capacity." Id. Ultimately, the Eleventh Circuit reversed the district court's grant of summary judgment as to Plaintiff's § 324A(c) claim and remanded the case for trial. Id. at 1157-58. In Hutcherson, the Eleventh Circuit concluded that "a jury might reasonably infer that TABS did reduce its safety activities in reliance upon Progressive. The jury could reasonably infer that TABS itself would have more closely monitored its drivers absent the substantial monitoring which was provided by Progressive." Id. at 1157 (emphasis added). However, a review of the facts of this case and the inferences that can be reasonably drawn from them, even taken in the light most favorable to Plaintiff, do not lead this Court to the same conclusion.

The facts in this case indicate that Defendant Canal first provided insurance coverage to Defendant Green Eyes on August 27, 2007. (Doc. 189, Attach. 22 at 101.) On October 13, 2007, Pedro E. Gonzalez, CEO of Defendant Green Eyes, sent a letter to

15

Defendant Canal that stated, in its entirety, that "I Pedro E. Gonzalez CEO will not allow anymore drivers with at fault accidents, Major speeding or more than 2 minor violations on my policy. I wish to work together with you to be a claim free Company with an excellent safety record." (Doc. 189 at Attach. 35 at 1.) Defendants initially approved a driver named Jose David Vicente on October 4, 2007 (Doc. 189, Attach. 17 at 74) and approved with surcharge a driver named Manuel Lopez Argullo on December 13, 2007 (Doc. 189, Attach. 33 at 1). On December 13, 2007, however, Defendants reversed their decisions approving Vicente and Argullo by letter, stating that

> [d]ue to the violations and accidents on both attached drivers' MVR reports and the owner's attached memo stating he will not hire any drivers with an accident, two or more violations, etc. . . ., we will not be able to add these drivers to the policy. Canal is already questioning his hiring practice on drivers and we do not want to push the envelope to [sic] far on this matter.

(Doc. 189, Attach. 36 at 1; Doc. 189, Attach. 18 at 35.) As Defendants conduct relates to Defendant Jiminez, Defendants allowed him to be added to the policy (Doc. 189, Attach. 41 at 1), even though his three-year MVR contained information that was violative of Defendant Green Eyes stated policies. (Doc. 189, Attach. 18 at 73-74.)

On the basis of these facts, it is obvious that a reasonable jury could conclude that Defendants undertook to

apply Defendant Green Eyes' stated employment policy, a policy that could reasonably be construed as both implicitly and explicitly implicating safety. The only realistically questionable element of Plaintiff's claim is that of subsection (c), reliance. Under Georgia law, reliance under § 324A(c) must be shown by a "change in position." Phillips v. Liberty Mut. Ins. Co., 813 F.2d 1173, 1175 (11th Cir. 1987). This required change in position can be satisfied by evidence that "the employer had neglected or reduced its own safety program because of the [] survey efforts." Bussey v. Travelers Ins. Co., 643 F.2d 1075, 1077 (5th Cir. 1981); see also Phillips, 813 F.2d at 1175 (indicating that a claim can be established by showing a company "neglected or reduced its safety practices because of [an insurer's] inspections"). In addition to direct evidence, Georgia law allows a jury to draw this conclusion based on circumstantial evidence. Phillips, 813 F.2d at 1175.

Plaintiff has argued that Defendant Green Eyes relied on Defendants in three ways, specifically by

> 1) changing its hiring practices after purchasing the Canal insurance policy as acknowledged by Canal in Jennifer Talbot's October 9, 2008 email and by Shelly in the October 10, 2007 letter; 2) by failing to request MVRs on drivers, including Jiminez, in order to evaluate those MVRs according to the employment criteria set forth in Pedro Gonzalez's October 13, 2007 letter; and, 3) by failing to send Faustino Jiminez to KV Carrier Services, Inc. for processing, despite repeated notices from KV to do so.

(Doc. 189 at 40.)

The problem with Plaintiff's argument lies in the critical requirement of "change" in Georgia's law of reliance, specifically as it pertains to § 324A(c). As to the first argument, the Court can find no evidence of the hiring practices that existed prior to Defendants beginning to act as Defendant Green Eyes' insurer. Instead, the evidence only shows a poor and noncompliant safety program from the very beginning—a program that continued to be substandard before, during, and after Defendants business relationship with Defendant Green Eyes. Similarly, Plaintiffs have presented no evidence of change in any of Defendant Green Eyes' employment practices, including MVR screening, either before or after the purportedly all-important October 13, 2007 letter or any other stage of Defendants' involvement. The same shortcoming still exists—Defendant Green Eyes' safety program was lacking from the very beginning.

Finally, Defendant Green Eyes' failure to send Defendant Jiminez to Defendant K.V. Carrier Services, Inc. ("K.V.") is similarly inapposite. Defendant Green Eyes did not contract with Defendant K.V. until March, 19, 2008. (Doc. 189, Doc. 42 at 1.) Defendant K.V. was hired by Defendant Green Eyes "[f]or the purpose of ensuring that Contractor is fully DOT complaint." (Id.) Indeed, Defendant Jiminez was not "approved" until March

19, 2008, the same date that the contract with Defendant K.V. was executed. (Doc. 189, Attach. 37 at 1.) Whatever inferences could reasonably be drawn from this timeline, Plaintiff's contention that Defendant Green Eyes was relying on Defendants for driver safety checks is certainly not one of them.

Contrary to the Eleventh Circuit's conclusion in Hutcherson, this Court is not persuaded that "a jury might reasonably infer that [Defendant Green Eyes] reduce[d] its safety activities in reliance upon [Defendants]." 184 F.2d at 1157. Plaintiff simply has not shown a "change in position," Phillips, 813 F.2d at 1175, or satisfied the causation requirement that harm be "suffered because of reliance," Restatement (Second) of Torts § 324A(c), on Defendants. In Hutcherson, the Eleventh Circuit noted that the district court improperly "discounted evidence put forth by [the plaintiff] that [the trucking company] had reduced its own safety program in reliance on [the insurer's] safety services." Id. Here, there is no such evidence to discount or ignore. Plaintiffs simply have not demonstrated what different practices Defendant Green Eyes followed prior to allegedly relying on Defendants.

Defendants' remaining arguments in opposition of summary judgment need not be addressed. For the reasons set forth

above, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's Restatement § 324A(c) claim.

## CONCLUSION

Because Plaintiff has not demonstrated that any action by Defendants "increased the likelihood of harm" or caused a nonhazardous condition to become hazardous, Defendants are entitled to summary judgment as to Plaintiff's claim under Restatement § 324A(a). Additionally, Plaintiff has not presented any genuine issue of material fact or shown sufficient evidence from which a jury could conclude that Defendant Green Eyes changed its position in reliance on Defendants, or that harm resulted "because of" that reliance, as required by Georgia law. Therefore, Defendants are also entitled to summary judgment as to Plaintiff's Restatement § 324A(c) claim. Accordingly, Defendants' Motion for Summary Judgment (Doc. 141) is **GRANTED**, and the Clerk of Court is **DIRECTED** to terminate these Defendants.

SO ORDERED this 30th day of September 2011.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA